THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* PABLO PORTALATÍN, Defendant and Appellant.

No. 14905.   Argued February 1, 1951.—Decided February 12, 1951.

146

*Luis A. Archilla Laugier* and *José E. Bosch Roqué* for appellant. *Víctor Gutiérrez Franqui, Attorney General,* (*Vicente Géigel Polanco,* former *Attorney General* on the brief), *J. Rivera Barreras, Fiscal of the Supreme Court,* and *Frank Vizcarrondo Vivas, Assistant Fiscal,* for appellee.

148

MR. JUSTICE SNYDER delivered the opinion of the Court.

The defendant was tried and convicted of violation of § 10 of Act No. 220, Laws of Puerto Rico, 1948, under an information alleging that "illegally, willfully and maliciously, he was the owner of a Bolipool game. That as such owner he operated said game and distributed or caused to be distributed among his agents for sale, tickets, slips, books and every type of material which is used or could be used in connection with the illegal games known as 'Bolita' and 'Boli-Pool' in combination with a clandestine lottery, paying a money prize to the person possessing the number which coincides with the last three figures of the number of the aforesaid lottery."

On appeal the first assignment is that the lower court erred in overruling the demurrer to the information. The defendant's position is that the information is ambiguous, unintelligible and "doubtful" and therefore does not comply with the requirements of § § 71 and 82 of the Code of Criminal Procedure, 1935 ed.[1] In support of this contention, the appellant argues that the allegation of ownership of a *"Boli-pool"* game does not give sufficient information to a defendant that he is accused of violating § 10 because there is no definition or mention of a "Boli-Pool game" in § 10 or elsewhere in Act No. 220.

We find this argument fallacious. In statutes and informations of this type the Legislature and the district attorney are entitled to use short-hand labels of activities which the community as a whole recognizes and understands without reciting in detail the various steps which make up

---

[1] Section 71, par. 2, provides that an information must contain "A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

Section 82, par. 7, provides that the information is sufficient if it can be understood therefrom: "That the act or omission charged as the offense, is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case."

such activities. For example, the Legislature did not in § 299 of the Penal Code describe the rules of poker and other gambling games when it made playing such games a crime. Yet a defendant could not attack § 299 as vague and ambiguous; nor could he contend that an information thereunder must set forth in great detail the method of playing poker. By the same token, one who lives in this community can reasonably be expected to understand the charge against him when he is accused of being the owner of a *"Boli-Pool* game". He knows what the rest of the public knows, and the public knows that *boli-pool* is played here by means of independent "games" which receive money from the sale of tickets or numbers and which pay prizes in money to the persons who hold the numbers which win in the drawings.

Section 10 of Act No. 220 is in this respect similar to § 4 of Act No. 25, Laws of Puerto Rico, 1935, Special Session, which also made it an offense to be the owner of a *bolita* game. Act No. 25 in the same way contained no definition or mention of the phrase *"bolita* game". Yet informations brought under § 4 used this term without describing in detail of what the game consisted. See *People* v. *Cardona*, 57 P.R.R. 682. As we pointed out in *People* v. *Mantilla*, 71 P.R.R. 35, 47, "Indeed, the use of such general terms is made necessary by the ingenious methods used by *bolita* operators to conceal their activities." See *Forte* v. *United States*, 83 F.(2) 612 (C.A., D.C., 1936); 2 Wharton's Criminal Law, 12 ed., § 1783, pp. 2085–6.

Under this assignment the defendant also argues that the information is not sufficient to spell out a violation of § 10 of Act No. 220 because it does not contain any allegation "that denotes possession or dominion" on the part of the appellant of any of the games prohibited by Act No. 220. Section 10 provides that "Any owner . . . of the games prohibited by this Act, shall be guilty of a felony . . . ".

The information is sufficient inasmuch as it charges violation thereof in the language of the statute.

We are unable to agree with the defendant that the information is vitiated by the reference therein to "a clandestine lottery". We construe the allegations of the information to mean that the lottery is being conducted by the defendant. It is true that the arrangement may be that the winning number is ascertained by something which occurs beyond the control of the defendant, such as at the race-track or in the Santo Domingo lottery. But that does not change the fact that the defendant is in substance operating a clandestine lottery of his own.

■■ The second assignment is that the lower court erred in overruling in part the motion for a bill of particulars. The motion asked for (a) the date of commission of the crime; (b) details of the so-called "*bolita* game"; (c) details of the imputed agency, giving the names of the alleged agents; (d) the type of clandestine lottery the defendant owned; (e) what type of prize was paid by the defendant and the form of payment.

The motion was granted as to (a) and (e). The motion was properly denied as to (b) and (d) for the same reasons already noted in discussing the first error. The defendant was not entitled to the information requested in (c) since this consisted of evidence rather than material appropriate for a pleading such as a bill of particulars. It is therefore apparent that our *dictum* in *People* v. *Mantilla, supra*, p. 48 that "If the defendant had desired a more specific description of the material, she could have obtained it by moving for a bill of particulars," does not apply to the facts of this case.

■ The third error is directed to the denial of the motion to eliminate "and distributed or caused to be distributed" from the information. The defendant contends that the terms are mutually exclusive and that one or the other should have been eliminated. We cannot agree. We

fail to see what prejudice flows from requiring a defendant to defend himself on a charge that as the owner of a *boli-pool* game he "distributed or caused to be distributed" *bolita* materials for sale. The defendant might have distributed, or caused to be distributed, or both. Indeed, he concedes that the information would not be defective if "or" had been replaced by "and". Describing the defendant's alleged acts in the alternative is simply a way of avoiding the problem of whether a charge of "distributing" would make the defendant liable for the acts of agents who acted under his orders as well as for his own acts. We find no prejudicial error in the order overruling the motion to eliminate.

The fourth assignment is that the lower court erred in denying the defendant's motion for trial by jury. Section 10 of Act No. 220 as originally enacted did not specifically provide that trial of cases thereunder shall be by court exclusively. A proviso to that effect was added to § 10 by Act No. 264, Laws of Puerto Rico, 1950. Since the alleged offense was committed prior to enactment of Act No. 264, the defendant contends that he had the option of trial by jury or by court.

The difficulty with his position is that shortly after passage of Act No. 264 we held that the general provision in § 4 of Act No. 220 for trial by court exclusively "for violations of the provisions of this Act" required trial by court on a charge of violation of § 8 despite the lack of such a specific provision in § 8 itself. *Rivera* v. *González, Warden,* 71 P.R.R. 626. In the same way, the general provision of § 4 required trial by court for violations of § 10 even prior to the amendment thereof in Act No. 264. In other words, in amending § 10 prior to the *Rivera* decision, the Legislature undertook to make it clear beyond peradventure that cases under § 10 shall be tried by court exclusively. The records of the Legislature show that this was the purpose of Act No. 264. *Actas de la Cámara de Representantes de abril 15, 1950,* p. 1536. But the *Rivera* case

demonstrated that this was unnecessary, and that trial by court must be had in such cases even where the alleged offense was committed as here prior to amendment of § 10. The lower court therefore did not err in overruling the motion of the defendant for trial by jury.

█ The fifth assignment is that the lower court erred "in admitting in evidence documentary proof not connected with the defendant and seized from a third person 18 days after commission of the crime imputed to the appellant."

The documents in question were Exhibit I, a scored book in blank, and Exhibit II, two pages taken from the book and filled with lists of three numbers followed by a period and another figure. Alejandro Núñez testified that from February 1, 1950 he was selling *boli-pool* numbers of the game of the defendant at the latter's request; that on February 6 the defendant had delivered Exhibit I to him to use to list *boli-pool* numbers sold by him for the defendant's game; and that the lists of numbers in Exhibit II were *boli-pool* numbers and had been prepared by him. This testimony was sufficient to show that the book and lists were used by Núñez as the defendant's agent to list numbers which he sold for the defendant's *boli-pool* game.

Núñez also testified on cross-examinaion that his house was searched on February 24; that Exhibits I and II were seized therein on that date; and that nothing had been seized at a previous search which was made between February 6 and 24. The defendant argues from this testimony that Núñez could not have been in possession of Exhibit I on February 6 as he testified, or between February 6 and 24, because it was not seized at the earlier search. We cannot agree with this argument. There are a number of ways in which Núñez might have had possession of the book on February 6 and yet have avoided seizure thereof at the first search. For example, he might have left it elsewhere temporarily or he might have successfully hidden it in his house. We do not agree that the testimony of Núñez as to the earlier

search requires us to discard his testimony connecting the defendant with Exhibits I and II. The fifth error was not committed.

■■■■■ The appellant assigns as errors the action of the lower court: (6) in overruling the motion for non-suit; (7) in finding the defendant guilty without sufficient corroboration of the testimony of the accomplice, Alejandro Núñez; (8) in finding the defendant guilty without sufficient evidence of the facts alleged; (9) in weighing the evidence. We think it appropriate to dispose of these errors together.

*Alejandro Núñez* testified that beginning February 1, 1950 he had agreed, at the request of the defendant, to sell *boli-pool* numbers of the game owned by the latter for 5 per cent of the product of the sales; that he delivered to the defendant the money from the sales; that on February 5, 1950 the number 013 was the winning number and was on his list for that day; that he had sold that number to a veteran who had played 80¢ and had therefore won $400; that on the following day the defendant came to his house and gave him $400 to pay the prize to the veteran; that on February 24 his house was searched and Exhibits I and II seized; and that as the defendant and not he was the owner of the business, he came to serve as a witness.

*Daniel Ortiz Figueroa* testified that he was in the fruit business with Núñez; that he was at the latter's house on the night of February 6 in connection with their business; that the defendant came to the house; that Núñez told the defendant that the veteran who had won the prize had already come to get his money; that the witness heard the number 013 mentioned; that the defendant took some money from his pocket and said to Núñez, "Take this to pay for that number"; that at the same time he delivered the money he left a book on the table; that the book had criss-cross lines and did not have any numbers written in it.

The foregoing, together with Exhibits I and II, was the proof offered by the People. The defendant presented no

testimony. We think our synthesis of the testimony is sufficient to show that errors (6) and (8) were not committed. As to (9), the appellant goes to great pains to show alleged discrepancies in the testimony of the government's witnesses. We think the record contains adequate explanations of these alleged discrepancies. But even without these explanations, it was the duty of the lower court to determine the credibility of the witnesses as to the essential elements of the case, after considering all the evidence. We find nothing in the record which would warrant our holding that the lower court committed manifest error in weighing the evidence when it believed the testimony which we have summarized.

As to (7), since Núñez was allegedly an agent of the defendant, he was an accomplice and corroboration of his testimony was required. *People* v. *Portalatín*, 63 P.R.R. 615; § 253, Code of Criminal Procedure, 1935 ed. However, corroborative testimony is not required for all the elements of a crime. The only requirement is that such testimony shall tend to connect the defendant with the commission of the crime. *People* v. *Baerga*, 70 P.R.R. 85; *People* v. *Segarra*, 70 P.R.R. 458; *People* v. *Rosario*, 68 P.R.R. 526. Nor is it necessary that the corroborative testimony be direct or strong, provided it tends to connect the defendant with the commission of the crime. *People* v. *Rosario, supra.*

In the operation of a *boli-pool* game, among other things, (1) money is received for bets, (2) a drawing is held for a winning number, and (3) the winning number is paid. The testimony of Ortiz clearly connected the defendant with the foregoing second and third elements of a *boli-pool* game as owner thereof. The testimony of Núñez, the accomplice, was therefore sufficiently corroborated under the rule just stated.

The tenth assignment is that the conviction of the defendant is null because § 10 is unconstitutional in that it violates the due process clause of the Organic Act. The appellant devotes only a page and a half of an elaborate brief

to this point. He asserts that § 10 does not meet the standards set forth in *People* v. *Mantilla, supra.* His reasoning is that the concept of "owner" of a prohibited game is vague, ambiguous and indefinite because owning such a game is an "abstraction". He also contends that § 10 should set forth the details of the prohibited games. These are frivolous contention and are answered by what we have said in discussing the first error.

█ Under this assignment, the defendant also argues that § 10 is invalid because it does not provide that the defendant must have acted "willfully or knowingly". Section 10 is, for present purposes, substantially similar to § 4 of Act No. 25 of 1935. In interpreting § 4, we disposed of a similar contention in *People* v. *Cardona, supra,* where we said at pp. 683–: "As may be seen, an allegation that the act was done '*knowingly*' is necessary where there is involved the carrying, conveying, or printing of the tickets, but it is otherwise where the accusation is directed against the person who operates, as owner, the prohibited game, or against the person who sells the tickets. And it is natural and logical that this should be so, since it is possible that a person may carry, convey, or print notes or tickets without knowing that the same are to be used unlawfully. But it can not be presumed that a person who sells *boli-pool* tickets or who operates said games as owner, agent, or proxy does so without knowing that he is violating the law. If the prosecuting attorney were required to allege and prove that a person who sold a *boli-pool* ticket or operated said game as owner did it knowingly, this would be tantamount to admitting that ignorance of the law is a good excuse for the non-compliance therewith."

█ The eleventh error is that the penalty imposed on the defendant of five to ten years in the penitentiary at hard labor is excessive. The sentence was in accordance with the terms of § 10 of Act No. 220, which provides for a term of not less than one year or more than ten years. We find

nothing in the record which indicates that the lower court abused its discretion in imposing sentence. *People* v. *Báez,* 70 P.R.R. 578.

The judgment of the district court will be affirmed.

---

MR. JUSTICE TODD, JR., dissenting.

I dissent. I consider that the testimony of the witness Daniel Ortiz Figueroa is insufficient in law to corroborate the testimony of Alejandro Núñez, the accomplice, in such a manner as to establish satisfactorily that appellant herein was the owner of a *boli-pool* game. In my opinion, the testimony of Ortiz did not connect the appellant, either clearly or in any other manner, with the operation as owner of a *boli-pool* game, regardless of the necessary elements to show how such operation is handled, which operation is not proved either.